All right, our next argument for today is 24-2276, Elias v. Department of Transportation. Ms. Bellinger, please proceed. Thank you, Your Honors. So to begin, the issue is regarding whether or not it was cumulative to call David Cisnero. And I think, first of all, we need to look at cumulative as to... Before you get into the meats of this, can I just ask you, you're not challenging the underlying merits of the removal, right? This is just about the procedural, what you say, procedural errors and how this case was preceded. But there's no challenge to the underlying conclusions, right? Not before you, Your Honor, no. And so what kind of relief are you seeking here? A remand-new trial. Just to allow the witness to appear? To allow the witness to appear to testify? I mean, I do think it's important because the witness was going to be testifying particularly about witness tampering and specifically being dissuaded by Mr. Loera and Mr. Urias from testifying that, from testifying. But the witness was not a precipient witness to anything involved in this case. But I disagree with that, Your Honor. I think he was a precipient witness to how the entire office operated. I think he was a precipient witness. Well, but that's not really being a precipient witness for the conduct that's alleged here. The falsification with respect to the inspection and the like, he didn't have anything to do with that. He was just going to provide his view on the character of the people that worked in the office, right? I think that is a correct assessment. But also, it was about the way that Mr. Urias was running that office and kind of set it up as his own personal fiefdom. And the idea... Wasn't that going to be the testimony of your client? So what's this additional witness doing? Well, again, he's testifying as to specifically the points of being dissuaded from testifying in the first place, A, but also it's not cumulative, I guess is the point that I'd like to make. It's not cumulative to bring in this additional evidence that when the entire case is decided based on my client's credibility, I should have some opportunity to bring in some evidence of his credibility. Traditional trial, if you said to the trial judge, I have five character witnesses that I want to bring in. They're all going to say the same thing about the character of whatever the party, whatever party is involved. The trial judge would be perfectly entitled to say, we don't need all these character witnesses to say the same thing. So why here is it an abuse of discretion for the judge to say, we hear this testimony. We don't need an additional witness to just say, I agree. Well, Your Honor, because there's no jury here to inflame or anything like that. This is just a waste of time is the abuse of discretion. That's the cumulative standard that they're using is it's just simply a waste of time. Stronger argument that the trier of fact doesn't need to hear this additional testimony. But the trier of fact in this case decided entirely based on how credible the witnesses were. And it was entirely based on the credibility, particularly of Mr. Urias and Mr. Elias. And on top of that, Mr. Elias wasn't going to be testifying to Mr. Loera's credibility, who is also a witness. But Mr. Loera was the one that went to David Cisnero and started talking to him about his potential being a witness in that case. So you want to explain, and I would hope you would rely on whatever proffer was, because the judge made his decision based on the proffer of what he was going to testify to, how that relates to dispelling or rebutting the charges against your client in this case? The reason being is that the charges against my client were effectively that he lied, right? That he lied in making the Aspen report and saying that he did the Aspen because he did the Aspen report right outside of the office, right? But the thing is, is that Mr. Elias was testifying that that was actually kind of a regular thing, is my understanding. And that Mr. Urias simply picked this as the opportunity to get rid of- What I didn't see, and the record is kind of all over the place. It's not very clear to me that this is put together, but I didn't see anything in the proffer that related to that this, what he was required to do, the reason he was for not doing it, was not the regular practice in the office and that everyone or a lot of people or other people had done what your client did in terms of the inspections and so forth. Maybe there's something missing for the record, but I didn't see anything in the proffer or discussion of what these witnesses, the witness that was excluded, would testify to had anything to do with those issues. So you want me to show me something in the record? Before you answer that, can I just add to it? At the hearing, didn't, I don't know if it was you that argued it, but wasn't it argued that he would testify to this? It was not in the proffer, but at the hearing, wasn't it argued that Mr. Cisnero had information about what, how they normally did these investigations and that would be part of his testimony? So that was, so there was actually two proffers and then one of the proffers, we kind of had a mini-argument about it on there and then that was discussed, I believe, during that second proffer in that discussion, I believe, but. Well, you want to, can we talk about the record? I mean, do you have, can you point me to what in the record we're talking about? The only discussion of the proffer that I could find or among them is the, in the A.J. and his rejection, his describing the proffer, I think, on page 270, appendix 274 and 275, I guess. So on. All right, well, so you didn't include this in the appendix, but we got the whole record in the case and I'm going to read what you wrote to try and help you out. Though Mr. Cisnero was not a witness to either the inspection or the conversation with Mr. Urias, he has been working alongside Mr. Urias for over a decade and is able to speak to the character of Mr. Urias, the relationship between Mr. Elias and Mr. Urias, how it had evolved over Mr. Elias' years of service, and here's the critical part, and the general office practices and training regarding investigations. So wouldn't that, isn't that what you're looking for? Where is that from? It's not in the record. They didn't submit it in the appendix, but it is in the record. It's their brief to the lower court on why he should be allowed to testify. So that, and that's in the proffer itself? No. Your petition for review. Was it in the blue brief too? No, it's nowhere. We got the record. So what we have in the record is the proffer itself, is the brief that I wrote to the NLJ. We don't have the, we don't have a record of that mini hearing that we had on that, but that was what I believe. No, the mini hearing you had on that, there's an audio tape. We listened to it. So there is, it's in the record. You just. I see. An audio tape, right? I see. That may be my mistake. Brad, is that right? Audio tape. Was it an audio tape of the hearing that you listened to? You've got the audio tape. Yes. Okay. Thank you. Go ahead. Was that for the main hearing or was that the hearing on the proffer? Brad, what hearing was it? Okay. I don't believe that there is a recording for the mini hearing on the proffer. It was very brief. It was only about five minutes long. And that was when that proffer was made is my understanding. But again, this was quite a long time ago. But I mean, I think these questions are all getting to really the heart of the issue. I understand your general argument about Mr. Elias should have an opportunity to have a credibility witness. He had zero credibility witnesses. He was not allowed to bring a single witness. And the AJ decided this whole case based on his credibility versus Mr. Uriah's credibility because Mr. Elias's intent is a critical element of the charges. So I get that argument, but that's only true if your witness was about to give testimony that would really shed doubt on the credibility of one of the witnesses with regard to a key fact, because otherwise it's just harmless error. Like just saying he's a good guy and there's a deteriorated relationship doesn't really tell me about whether he intended to, for example, falsify documents. He submitted an inspection report claiming he had done portions of an inspection. There's no question he didn't do. So did he intend to deceive? And how would Mr. Cisnero have shed any light on what Mr. Elias's intentions were with regard to that? That is a good question, Your Honor. I believe it all comes back to Mr. Uriah's intent more so than Mr. Elias's intent. Because Mr. Uriah's is the one who's out there. No, isn't the problem with that, and that's how I understood Ms. Cisnero was going to testify. He was going to not testify as to the character of Elias. He was going to provide negative testimony with respect to the character of Mr. Uriah, the supervisor, right? That is correct, Your Honor. Okay. So that being the case, following up on Chief Judge Moore's question, the central issue here is whether or not Mr. Elias falsified or didn't falsify. How is Cisnero's testimony going to have anything to do with that question? At best, it's going to be saying, you can't believe anything Mr. Uriah says. Well, you don't even have to here because there isn't any dispute, is there, that Mr. Elias falsified the inspection report? The issue was whether or not Mr. Elias not just falsified the inspection report, but there was also the lack of candor charge as well from when Mr. Elias was speaking to Mr. Uriah, and that goes directly to that conversation. While it doesn't go necessarily to the falsification of the document, it does go to why the document, it goes to the conversation. Isn't the falsification in and of itself enough for termination? But that's not what the government relied on. That's not what their case was about. Their case was about the lack of candor on top of the falsification of the document. If we only sustained one charge, we'd have to remand for the government to do a new Douglas Factor assessment of the penalty of removal to ensure that it is adequate? Yes, Your Honor, exactly. Okay. I just need my recollection refreshed based on this record. You're saying there are two pieces to it, and the second piece was the conversation that the two had. Yes. And what's the daylight between what they were saying that would require a third party who wasn't present at the conversation, right? So Mr. Uriah goes to Mr. Elias, and he says, oh, and again, my understanding is- What's the charge in the case? Lack of candor and falsification of documents. Okay. And lack of candor is described as how? It's, it was the, I'd like to be specific with Your Honors about this. I appreciate that. Bear with me a moment. I may need to pull this up and rebuttal. It's, well, I've got it at Appendix 27. Appendix 27, Your Honor. The specification says when I talk to you, well, anyway, you can read it for yourself, but I'm just trying to glean from that what your, what the essence of the lack of candor was, the dispute between who said what in the specification that was charged. Specifically, Mr. Uriah wrote down, when I talked to you on May 31, 2019, you stated that you did a walk around and inspection on the motor coach. During our discussion, you repeatedly stated you did not need to tell anyone that you were doing an inspection, did not acknowledge completing the Aspen report on a vehicle that was present. And your client said that was all not true? It was, I don't believe he said it was not true necessarily, but the whole, you did not need to tell anyone that you were doing an inspection, that was something that Mr. Uriah really harped on as being very important. When Mr. Elias is saying, and when Mr. Elias is saying, I, you know, I don't need to tell anybody when I do an inspection, because that's just a regular part of his job, is what he's trying to say. It's not a lack of candor, it's a breakdown in communication. And that's one thing Mr. Cisneros certainly would have testified to. And he would have a basis for knowing that, not being part of the conversation, but because he was aware of the general atmosphere in the office? And the dynamic between the two, particularly. The idea was, is the idea behind the charge in the first place, was that Mr. Elias was not being candid with Mr. Urias. But that wasn't the case. It was just simply that they had a serious breakdown of communication. Okay, why don't we save your remaining time for rebuttal. Let's hear from Mr. Smith. May it please the court. Neither of the discovery rulings issued by the MSPB in this case constitute an abuse of discretion. And even if it had, the uncontroverted and weight of the evidence more than establishes that this would have been harmless error in this instance, because Mr. Elias falsified documents and did not engage in a candorous conversation with his supervisor following the false inspection report. At the outset, I'll start with Mr. Cisneros. I think the court's questions correctly point out that some of the topics that are being discussed here were not raised in the actual proffer. I would direct your court's attention to Appendix 5 and then Appendix 11 and 12, which is the renewed discussion of the proffer. And the discussion regarding the general candor and practices of the office just was not a portion of that proffer. Further, it was cumulative in that Mr. Urias and Mr. Elias both took the stand. Mr. Elias did discuss his relationship with the supervisor, but never testified regarding the practices of the office or ongoing. Frankly, I'm not sure how this would tie into the fact that a false inspection report was filed. We're talking about the lack of candor, so why don't you focus on that?  Firstly, let me ask you a question, because I've seen cases go different ways. Sometimes the agency, the defendant here, will make sure that their supervisor on the stand says, the deciding official says, if there's several specifications, I would have taken the same action irrespective, even if it was just on one. Is there any of that in the record? I believe that was in the government's filing regarding the proposed removal, but I do not believe that came up during the testimony, Your Honor. But I do want to draw the attention to the testimony of Mr. Urias and Elias at the hearing. Neither, the relationship between Mr. Elias and Mr. Urias was discussed at length in his direct examination. However, there was no discussion of surrounding events that may have justified the lack of candor given in the discussion. Importantly, when Mr. Urias, the supervisor, took the stand, he was subject to approximately three questions on cross, none of which delved into the substance of this discussion or the practices of the office. Frankly, Your Honor, having determined not to ask those questions at the cross, it is difficult to now argue that somehow the testimony would not have been cumulative, because that route of discovery had been abandoned during the hearing. So it's difficult for us to determine now that we should basically be allowed a second bite at the apple by a witness that had previously been excluded based on two proffers, and the subject of both proffers not appearing in the testimony that we're hearing now. Is it your position that the situation in the office is irrelevant? Precisely, Your Honor. I'm not sure how the situation in the office could justify the submission of a false report. The heart of Mr. Elias's duties is to submit inspections of large motor coaches and large trucks on the road. Let's just say that I agree with you on this part, but what about, I mean, I don't see where the government did say on either of these two charges the same penalty would have been reached. And on candor, Mr. Elias testified, you can see it at page A22 of this record, when he was complaining about why, or trying to explain how he didn't have a lack of candor, he says that Urias didn't let me finish, like his answers. He's talking about how in the conversation he had with Urias, when Urias kept asking him questions about, well, no one saw you do this, Mr. Elias's testimony was Mr. Urias didn't let me finish my answers. So how, wouldn't it be relevant then if there's someone that can testify to the dynamic between these two men in the office? Wouldn't that possibly have shed light on Mr. Elias's credibility when he's trying to explain the lack of candor allegation? Your Honor, I'll have to take you on your word regarding, no, no, no, I'm sorry. I wanted to address the first part of your question with regards to the competing, whether either charge individually would have justified removal. I, I admittedly do not have that site handy. So I will take your word at that. But you don't have to take my word. I didn't see it. I didn't see anything in this record where the government, you know, the government, like Judge Prost said, the government often has, um, you know, basically there are two charges and then they conclude in the actual removal, they'll say either charge is sufficient to sustain removal. I don't see that here in the removal. That may be true, Your Honor. I believe that argument was offered at some point, but I take you. As for the appendix 22 issue at the, I do believe that the credibility of the witness as judged by the trial court certainly addresses the issues that you have regarding his inability to finish. I would also argue, Your Honor. Wait, the crowd court said, I find Mr. Elias more credible than Mr. Urias. I don't know how to say these names. Respectfully, Your Honor, it went further than that. He said that he found Mr. Elias' testimony not credible as to whether even any inspection had occurred whatsoever and his candor. Okay, but whether any inspection occurred is different from the lack of candor charge. Lack of candor charge is based on a single conversation. We agree. Two men. We agree, Your Honor. And in that single conversation between these two men, Mr. Urias is asking him some, some really not very, uh, nailed down, clear questions based on this record. Mr. Urias is like, well, nobody saw you do an inspection. Why nobody's you do an inspection? Well, that's not, did you do the inspection? That's not, where did you do the inspection? That's not, did you look at the brakes? That's, you know, those are, he, he clearly is not a lawyer, right? So he didn't know how to ask really precise and direct questions. And Mr. Elias, fair enough. I'll tell you, I don't think he sounds super credible and I read his testimony. He's all over the place. But what he says is, but Urias would not let me finish my answers. That's in the A.J.'s opinion. And so if that's true, why doesn't the extra witness who does have information about the nature of the relationship between these two men, why can't that possibly, suppose Mr. Cisneros came in and said, Urias is a bully. He asks you crazy questions and doesn't wait for you to answer all the time. He is a terror to the staff. I'm not saying that's what Mr. Cisneros is going to testify to. But what if he did? Don't you think that could have affected the judge in terms of his assessment of the credibility on just whether or not Mr. Elias was exhibiting a lack of candor in that conversation? Two points, Your Honor. Mr. Elias was asked at length during his direct testimony regarding that conversation and his relationship with Mr. Urias. So this was not some hidden fact that was not brought up in the trial. That came up during direct to Your Honor. But wait, Mr. Elias, you're judging the credibility between two people. If there's a third party who has witnessed interactions between these two people with regularity, you don't think that could influence the assessment of credibility between the two people? I think it could have. I think it was cumulative to the fact that the substance of this testimony had come out by Mr. Elias and then was not pursued. But it's credibility. The substance of Mr. Elias' testimony came out, but then the judge said it wasn't credible. And you don't think that there's some third person that has witnessed these two bashing heads over and over again or one bullying the other? I don't know. No, I concede it may have made a difference as to...  On cross-examination, was Mr. Urias asked about whether he cut... Mr. Elias said, he cut me off and he wouldn't let me explain. Did... On cross-examination, was Mr. Urias... I mean, he may have said, yes, I cut him off because and explained the circumstance. Was he asked that during... That did not come up on cross-examination, Your Honor. But you do get to my second point, which is the substance as to the lack of candor was never at question, right? During the second meeting, he had written, I inspected the brakes. When approached during the conversation, did you inspect the brakes? Mr. Elias never confessed. He never came forward and said, you're right. In fact, he doubled down with the language of, I don't have to tell you when I do an inspection report. So the very lack of candor charge here was premised on the fact that Mr. Elias never admitted during the conversation with Mr. Urias that the inspection had not taken place, that the inspection took place on the street outside the office instead of the scale as indicated in the report. That the office, that it was never, the truck was never present at the scaling facility on May 29th per the report, or that it had crossed into Mexico on that day, excuse me, from Mexico into the United States. There is no allegation in this, in any of the testimony or in the argument of opposing counsel that those things actually happened. So while I agree that it may, a third party witness arguably, and I would still argue and submit, Your Honor, that this would not be an abusive discretion to not have additional testimony regarding these two individuals' relationship. When both testified at the hearing, the testimony was never going to rebut the lack of candor. And having, because that witness was not a subject to, it was not present for the conversation at issue, which led to the lack of candor charge, he was justifiably, and in my opinion, rightfully excluded from testifying. But in any regard, it was certainly not an abusive discretion to prevent him from offering what was, at its very core, additional character evidence regarding these two individuals and their relationship, which frankly was not at issue in this hearing, nor was the lack of candor. I mean, the lack of candor was admitted conduct. So I'm not sure that the exclusion of a witness that would provide additional color, for lack be an abusive discretion when the core of the charge, both the lack of candor charge and the falsified inspection report, are unrebutted admitted testimony, excuse me, admitted facts. Absent any further questions, I will give up the balance of my time. Okay. Thank you, Your Honor. Thank you. Ms. Bellinger, you have a little bit of rebuttal time. I do want to clarify that on Cross, that route of discovery wasn't abandoned. Just simply the fact was is that he had no discovery to work with, as pointed out, and he also didn't have any witnesses on behalf. So I mean, I felt that a Cross would be a fool's errand at that point. As to the report itself, what I would say is that the entire basis for it was a the fact that he did it on the street outside. Not that it was a bad necessarily report, but it was that the fact that he put the wrong place in the Aspen report itself. And the fact is, is that the way the office worked was that very often people would put things in the Aspen report. You know, different locations, things like that. And I believe that did come up during testimony and direct. I just want to clarify, are you still advancing the argument about the discovery extensions and the denial by the judge, or have you dropped that? I will submit to your opinion on that. But what I will say is that it was a combination of factors, Your Honor. It was the combination of factors that really made it impossible, I believe, for him to get a fair trial in this situation, because he did not have access to his discovery. He didn't get a single witness on his behalf. And this was the only, this was the only witness. What I'm specifically asking is, I thought one of the issues that you thought warranted sending it back was that you were denied requests to extend discovery. Yes. I just want to know, is that something you're saying somehow standing alone it might not be enough, but it's somehow combined with the issues we've been talking about? Yes, Your Honor. I do believe that it is a combination of factors. It's not just the simple, it's not just one on its own. Okay, Ms. Fellinger, our time has run out. I thank both parties for their argument. The case is taken for submission. Thank you, Your Honor.